**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:04CV94-1-V
5:00CR41-1-V**


| | | |
|---|---|---|
| **ELDRED DONELL EADY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **O R D E R** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |


**THIS MATTER** comes before the Court on Respondent's Motion for Summary

Judgment (Doc. No. 8), filed October 13, 2004; Petitioner's Motion for Summary Judgment

(Doc. No. 13), filed March 3, 2005; and Petitioner's Motion to Amend (Doc. No. 14), also

filed March 3, 2005.

## PROCEDURAL HISTORY

On September 13, 2000, a grand jury indicted Petitioner in a one-count Bill of

Indictment charging him with conspiring with his co-defendants from in or about January

1995, until on or about August 17, 2000, to possess with intent to distribute cocaine and

cocaine base in violation of 21 U.S.C. §§ 841 and 846.  The Indictment specifically

charged that the conspiracy involved in excess of five kilograms of cocaine and in

excess of 50 grams of cocaine base.  On October 23, 2000, the Government filed a §

851 Notice of Intention to Seek Enhanced Penalties based upon a 1996 Georgia

conviction for possession with intent to distribute marijuana.

On January 14, 2002, a jury returned a guilty verdict finding that Petitioner was responsible for at least 5 kilograms of cocaine and at least 50 grams of cocaine base. On August 21, 2002, Petitioner was sentenced to 262 months imprisonment.  Petitioner directly appealed his sentence and conviction to the United States Court of Appeals for the Fourth Circuit.  On May 15, 2003, in an unpublished opinion, the Fourth Circuit denied Petitioner's appeal.   United States v. Eady, No. 02-4690 (4th Cir. May 15, 2003). On June 27, 2003, the United States Supreme Court denied certiorari.

On July 16, 2004, Petitioner filed the instant Motion to Vacate, Set Aside, or Correct Sentence.  In his motion he argues that: 1) his jury did not represent a fair cross-section of the community; 2) there was prosecutorial misconduct; and 3) his trial and appellate counsel were ineffective.

## ANALYSIS

## I. JURY VENIRE CLAIM

Petitioner alleges that the jury venire from which the petit jury for his case was selected and empaneled did not represent a fair cross-section of the community.  More specifically, he alleges that "African American individuals were systematically excluded from the venire" and that he was "tried before an all-white jury."  (Mot. to Vac. pp. 16-17).

Petitioner did not raise this claim on direct appeal.  The failure to raise a claim on direct appeal typically results in procedural default barring collateral review.  See Bousley v. United States, 523 U.S. 614, 623 (1998).   To obtain review of a defaulted claim a petitioner must first demonstrate either "cause and prejudice" or that he is

2

actually innocent.  Id. at 622 (internal citations omitted).

In his response to the Motion for Summary Judgment, Petitioner asserts that he has not procedurally defaulted his jury venire[1] claim because his counsel was ineffective.   (Pet. Resp. Mot. Summ. J. pp. 2-3).

At a minimum, Petitioner cannot establish that he was prejudiced and therefore he cannot establish that he received ineffective assistance of counsel.  See Strickland v. Washington, 466 U.S. 668, 687-91 (1984).  As elaborated upon by Petitioner in his response to the Government's Motion for Summary Judgment, the basis for his jury-venire claim is the disparity between the number of blacks who are registered voters and the actual number of blacks who live in Iredell County.[2]  (Pet. Resp. to Mot. Sum. J. p. 5).  Petitioner asserts that "these statistics clearly indicate that a systematic exclusion of grouping exists in the jury process."

The United States Court of Appeals for the Fourth Circuit, however, has explicitly upheld the use of jury registration lists to select potential jurors, even if minorities were underrepresented on those lists, so long as there has been no affirmative discrimination in voter registration.  See United States v. Cecil, 836 F.2d 1431, 1448 (4th Cir.) ("[T]here is no violation of the jury cross-section requirement where there is merely

---

[1] It is unclear to the Court why the Government characterized Petitioner's claim as a Batson claim.  In his Motion to Vacate, Petitioner asserts that his jury pool did not represent a fair cross-section of the community.  Petitioner cites to various cases but does not cite to Batson.  Nor does Petitioner allege that the prosecutor used a peremptory challenge with regard to an African-American venire member.

[2] Iredell County is only one of the nine counties making up the Statesville Division of the Western District of North Carolina.  Jurors are drawn from the voter lists of all these counties.

underrepresentation of a cognizable class by reason of failure to register, when that right is fully open."), cert. denied, 487 U.S. 1205 (1988).  Petitioner makes no allegation of affirmative discrimination in voter registration and therefore he has failed to allege a jury venire claim and consequently failed to establish the prejudice needed to establish ineffective assistance of counsel so as to establish cause for procedurally defaulting his jury venire claim.

## II.  PROSECUTORIAL MISCONDUCT

Petitioner alleges four instances of prosecutorial misconduct: 1) failure to disclose evidence in a timely fashion; 2) improper opening statement; 3) coaching Government witnesses to testify falsely; and 4) deceiving the Court and the defense concerning material evidence in the case.

### A.  Failure to Disclose Evidence in a Timely Fashion

Petitioner alleges that the prosecutor failed to disclose in a timely fashion the audio and video recordings of the "drug bust" involving Petitioner that took place in Florida.  (Mot. to Vac. p. 19).

In response to Petitioner's allegations, Respondent has provided documents that establish that on August 20, 2001, the prosecutor contacted defense counsel and brought the tapes at issue to his attention.  The Government notes that although its open file policy contains explicit instructions to defense counsel that they have a continuing duty to stay current, because the prosecutor noticed that defense counsel had not reviewed discovery since the arrival of the tapes, he notified counsel, via letter, of their existence.  This notification letter was sent five months prior to trial.

Petitioner responds by stating that the Government's delay of three months from the time it received the videos to when the letter was sent caused a delay of 62 days in his trial. Petitioner does not address the fact that the Government had an open file policy. Nor does he address the fact that his counsel had ample time to review the tape at issue prior to trial.

Brady and its progeny require the government to provide to the defendant all information in its possession which could tend to exculpate the defendant or could be useful for impeachment of any prosecution witness. Brady v. Maryland, 373 U.S. 83, 87 (1963); Giglio v. United States, 405 U.S. 150, 154-55 (1972). To succeed on a Brady claim a petitioner must demonstrate that: 1) the evidence at issue was favorable to the defendant, whether directly exculpatory or of impeachment value; 2) it was suppressed by the state, whether willfully or inadvertently; and 3) it was material. Spicer v. Roxbury Correctional Institute, 194 F.3d 547, 555 (4th Cir. 1999)(quoting Brady v. Maryland, 373 U.S. 83, 87 (1963)).

Evidence is material if there is a reasonable probability that the outcome of the trial would have been different if the evidence had been disclosed. See United States v. Bagley, 473 U.S. 667, 682 (1985). A reasonable probability is established when the failure to disclose the evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 435 (1995). "However materiality is not established by the mere possibility that the withheld evidence may have influenced the jury." United States v. Palmer, 160 F.3d 473, 479 (8th Cir. 1998).

Quite simply, Petitioner fails to state a Brady claim. The evidence at issue – the

video tapes of the Florida drug bust – was never suppressed by the prosecution. These tapes were available to defense counsel through the Government's open file policy. In addition, the prosecutor informed defense counsel of the existence of the tapes five months before trial. A Brady claim is not concerned with the time it takes to bring a defendant to trial.

**B.  Failure to Confine Opening Statement to Admissible Evidence**

In his Motion to Vacate, Petitioner does not provide any argument whatsoever to support his broad assertion that the prosecutor failed to confine his opening statements to admissible evidence. (Mot. to Vac. p. 17). Indeed, even after the Government pointed out this deficiency, Petitioner did not provide any argument with regard to this claim. Consequently, Petitioner's claim is dismissed. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992)("a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing.")

**C.  Coaching a Witness to Provide False Testimony**

In his Motion to Vacate, Petitioner does not provide any argument whatsoever to support this broad assertion that the prosecution coached a witness to testify falsely. (Mot. to Vac. p. 17).  After the Government pointed out this deficiency, Petitioner alleged that the prosecution instructed  witness Agent Reardon to testify falsely concerning a conversation he had with Petitioner about a $ 1,700.00 wire transfer. More specifically, Petitioner alleges that, during a break, the prosecution instructed Agent Reardon to testify that he had never told Petitioner about an August 2000 wire

transfer.  (Pet. Resp. Mot. Summ. J. pp. 6-7).

Petitioner admits that his claim is based entirely upon the testimony provided by Agent Reardon before the break – that he did not remember saying the statement at issue but that he could have possibly said it as a ruse (Tr. Trans. pp. 242-43) – compared with his testimony after the break – that he never told Petitioner that such a wire transfer had taken place (Tr. Trans. p.  244).

A prosecutor's knowing use of perjured testimony or knowing failure to disclose that testimony used to convict a defendant was false is a violation of due process, and a conviction must be set aside if there is a reasonable likelihood that false testimony could have affected the judgment.  <u>See</u> <u>United States v. Bagley</u>, 473 U.S. 667, 678 (1985).  At the outset this Court notes that Agent Reardon's testimony before and after the break is not contradictory.  Rather, it appears that after having time to reflect upon the question and review documents, Agent Reardon became more confident in his memory of the conversation.[3]  It is not apparent, based solely upon the trial transcript, that any perjury or coaching occurred.  As Petitioner provides no evidence other than the transcript itself, to support his assertion that the prosecution knowingly instructed Agent Reardon to testify to facts that he knew to not be true, Petitioner has failed to establish his claim.

**D.  <u>Deception Involving Material Evidence</u>**

Petitioner alleges that the prosecutor committed misconduct by "deceiving the

---

[3] The Court notes that at the break Agent Reardon reviewed his subpoenas and realized that the dates covered by his subpoena did not include August 2000.  (Tr. Trans. pp. 244-7).

defense and court regarding material evidence." (Mot. to Vac. p. 17). In his Motion to

Vacate, Petitioner does not provide any argument whatsoever to support this broad

assertion. Indeed, even after the Government pointed out this deficiency, Petitioner did

not provide any argument with regard to this claim. Consequently, Petitioner's claim is

dismissed. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992)("a habeas

petitioner must come forward with some evidence that the claim might have merit.

Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary

hearing.")

## III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner alleges twenty-one instances of ineffective assistance of counsel.

Petitioner's contention that he received ineffective assistance of counsel is governed by

the holding in Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In Strickland, the

Supreme Court held that in order to succeed on an ineffective assistance of counsel

claim, a petitioner must establish that counsel's performance was constitutionally

defective to the extent it fell below an objective standard of reasonableness, and that he

was prejudiced thereby, that is, there is a reasonable probability that but for the error,

the outcome would have been different. In making this determination, there is a strong

presumption that counsel's conduct was within the wide range of reasonable

professional assistance. Id. at 689; Fields v. Attorney General of Md., 956 F.2d 1290,

1297-99 (4th Cir.1992), cert. denied, 506 U.S. 885 (1995). Petitioner bears the burden

of proving Strickland prejudice. Fields, 956 F.2d at 1297. If the petitioner fails to meet

this burden, a "reviewing court need not consider the performance prong." Id. at 1290.

### A. **Failure to Object to Voir Dire**

Petitioner alleges that his counsel was ineffective for failing to object to prosecutorial comments and questions during the voir dire process. (Mot. to Vac. p. 21-22). In support of his assertion, Petitioner states that although the prosecutor "continually posed prejudicial comments and questions to elicit prejudicial information about drugs on campus and police being killed . . . trial counsel did not object." (Pet. Mot. to Vac. p. 22). Petitioner contends that the prosecutor's questions and comments tainted the jury.

Petitioner does not cite to specific comments or questions to support his allegation. Nevertheless, this Court has reviewed the entire voir dire transcript and did not locate any comments by the prosecution concerning police being killed. With regard to drugs on campus, the only comment or question by the prosecutor regarding this topic was his question as to whether any potential juror was personally familiar with drug-related activity in the Boone/Appalachian State area. (Tr. Trans. pp. 14-15). Such a question is not improper and Petitioner's trial counsel would have had no basis for objecting and therefore he was not ineffective.

### B. **Failure to Adequately Cross-Examine Witnesses**

In his Motion to Vacate, Petitioner alleges that his counsel was ineffective for failing to adequately cross-examine material government witnesses. (Mot. to Vac. pp. 22-24). In support of his argument Petitioner asserts that his trial counsel should have impeached the testimony of Oscar Taylor and Loren Paul with portions of the tape recordings he identifies by date. In response, the Government asserts that Petitioner's

claim is insufficient because he gives no explanation as to how the tapes would have impeached the witnesses in question. In his Reply, Petitioner provides eight instances where he alleges the testimony of Oscar Taylor, Loren Paul, or Clyde Everette differed from the content of a specified tape.[4]

In his affidavit, Petitioner's trial counsel asserts that the tapes at issue included conversations about cocaine and the defendant or were by defendant and the tapes contained evidence that connected Petitioner to cocaine and the co-conspirators months prior to his arrest. (Bell Aff. ¶ 3B). At trial Petitioner raised issues concerning the playing of the tapes. (Tr. Trans. pp. 349-50; 716, 718). At that time, Petitioner's counsel informed the Court that he had listened more than once to all of the tapes at issue and that he had never intended to play them at trial. (Tr. Trans. pp. 717-20). The evidence supports the conclusion that Petitioner's counsel's decision not to play the entire tapes was a strategy decision and not an oversight or due to lack of preparation.

A "strong presumption" exists that a trial counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. For a lawyer's trial performance to be deficient, his errors must have been so serious that he was not "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. And the reasonableness of a lawyer's trial performance must

---

[4] The Court notes that Petitioner provides no support for his assertions as to what various tape recorded conversations contained. The Court is unable to verify the content as it does not possess the tapes or transcripts of these tapes. As it is Petitioner's burden to establish his claims, his failure to offer support for his assertions is cause for this Court to dismiss this claim. In any event, even assuming Petitioner's representations are accurate, his claim still fails.

be "evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of reasonableness is highly deferential." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); see also Strickland, 466 U.S. at 689.

With the above as the standard, this Court cannot conclude that Petitioner has presented sufficient evidence to establish that his counsel was not functioning as counsel when cross-examining witnesses. Indeed, this Court's independent recollection of Petitioner's counsel's efforts is of a lawyer who ably represented Petitioner, including during cross-examination. Moreover, in reviewing Petitioner's alleged discrepancies the Court notes that Petitioner never addresses his counsel's consistent concern that much of the evidence on the tapes is very damaging. (Tr. Trans. pp. 718 ; Bell Aff. ¶ 3B). Nor does Petitioner address the strong evidence, aside from these alleged inconsistencies, that were presented at trial such as the seizure of over one kilogram of cocaine during the Florida stop (Tr. Trans. pp. 582-85); his former friend Shana Deshazo's testimony that she had observed him with cocaine and had seen him engage in drug transactions on numerous occasions (Tr. Trans. pp 270-76); a former friend's testimony that he had observed Petitioner involved in drug transactions on numerous occasions and that Petitioner had helped the friend become involved in dealing drugs (Tr. Trans. pp. 412-27); and the testimony of the three witnesses at issue concerning Petitioner's involvement in the drug conspiracy beyond the August 2000 arrest. Thus, even if Petitioner were correct that portions of the tapes might serve to some degree to impeach portions of various witnesses' credibility, Petitioner has not established that these "impeachments" lead to a conclusion that

there is a reasonable probability that but for the failure to impeach on these bases, the outcome of the trial would have been different.  Consequently, Petitioner has failed to allege a claim of ineffective assistance of counsel on this basis.

**C. <u>Failure to Call Femi Barrett as a Witness</u>**

Petitioner alleges that his counsel was ineffective for failing to call Femi Barrett as a witness to discredit Loren Paul's testimony.[5]    (Mot. to Vac. pp. 24-27).   Petitioner asserts that this failure resulted in an unfair trial.

Upon reviewing the testimony of Loren Paul, (Tr. Trans. pp.  462-519), the Court notes that Petitioner's counsel conducted a vigorous cross-examination.  In addition, the Court does not find that the alleged testimony Ms. Barrett would have given would have been particularly helpful to Petitioner's case.  That is, whether or not Petitioner intended to be present for the drug deal has no bearing on whether Petitioner arranged for the drug deal to take place.  Moreover, given the overwhelming evidence of Petitioner's guilt – the Florida traffic stop; taped cocaine deal conversations; phone records; and wire transfers; his conduct on August 17, 2000; and his trial testimony admission of guilt – the alleged testimony of Ms. Barrett would not have undermined the jury's verdict.  Consequently, at a minimum, Petitioner cannot establish that he was prejudiced by counsel's alleged failure to call Barrett as a witness and thus his ineffective assistance of counsel claim on this basis fails.

---

[5] The Court notes that the parties disagree as to whether Petitioner informed counsel that Femi Barrett would be a favorable witness and that she was willing to testify.  The Court need not resolve this factual dispute because the Court has concluded that in any event, Petitioner was not prejudiced by any failure to call this witness.

12

### D.  Failure to Dismiss Juror No. 9

Petitioner alleges that his counsel was ineffective for failing to strike juror no. 9 who had an admitted hearing problem.  (Mot. to Vac. pp. 27-28). Petitioner asserts that counsel knew that Petitioner's defense was to challenge the interpretation of the tapes and therefore he should have struck juror no. 9.

Petitioner's claim fails because he cannot establish, indeed does not even allege, that juror no. 9 did not hear the tapes.[6]  Moreover, he does not adequately establish how specifically he was prejudiced if indeed juror no. 9 could not clearly hear all of the tapes.  That is, he does not address what exactly the juror would not have heard.  In addition, Petitioner does not address the existence of other overwhelming evidence that he was guilty.  Petitioner has therefore not established that his counsel was deficient or that he was prejudiced and his claim on this basis fails.

### E.  Failure to Object to All-White Jury

Petitioner alleges that his counsel was ineffective for failing to object to the jury for violating the equal protection clause and 28 U.S.C. §§ 1861-1878 when the jury did not represent a fair cross-section of the community and did not fairly represent African-Americans.  (Mot. to Vac. p. 28).

For the reasons set forth earlier in this Order, Petitioner's counsel was not ineffective for failing to object on these bases as they would have been meritless objections.

---

[6] Juror no. 9 stated during voir dire that he would raise his hand if he needed to have testimony or tapes repeated.  (Trial. Tr. p. 13).

## F.  Speedy Trial Denial

Petitioner alleges that his counsel was ineffective because he denied Petitioner his right to a speedy trial by filing for numerous continuances.  (Mot. to Vac. pp. 28-30).

The Fourth Circuit explicitly ruled that Petitioner's speedy trial rights were not violated.  See United States v. Eady, No. 02-4690, slip op. at 3 (4th Cir., May 15, 2003). Issues fully litigated on direct appeal may not be relitigated in a subsequent § 2255 action.  See  Boechenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). Petitioner therefore cannot assert a speedy trial violation as evidence of prejudice due to his counsel's actions and his ineffective assistance of counsel claim on this basis fails.

## G.  Failure to File a Timely Motion to Suppress

Petitioner alleges that his counsel was ineffective for failing to conduct a proper inquiry into the evidence seized and for failing to file a timely motion to suppress[7] evidence seized during stops in 1995, 1999, and 2000.  (Mot. to Vac. pp. 30-33). Petitioner asserts that he had a legitimate expectation of privacy in the searched areas. Petitioner does not specify the circumstances of each stop or why he had a right to privacy.  His claim is therefore wholly insufficient and he has failed to establish that he received ineffective assistance of counsel.

## H.  Conflict of Interest

Petitioner alleges that his counsel was ineffective because a conflict of interest

---

[7] Petitioner's counsel did argue to suppress certain evidence in relation to the April 2000, stop and the Court granted part of his Motion to Suppress.  (Tr. Trans. pp. 53-72).

existed between counsel's busy schedule and Petitioner's right to a speedy trial.  (Mot. to Vac. pp. 33-34). For reasons already stated, Petitioner cannot establish that the alleged conflict adversely affected his counsel's performance by violating his speedy trial rights because the Fourth Circuit has already ruled that Petitioner's speedy trial rights were not violated.  Moreover, a blanket assertion that defense counsel had a busy schedule is simply not sufficient to support a conflict of interest claim.  See United States v. Zackson, 6 F.3d 911, 921 (2d Cir. 1993)("In order to classify [a busy schedule] as a per se sixth amendment violation, we would have to conclude that virtually all busy defense attorneys . . . who have more than one client . . . are inherently incapable of providing an adequate defense . . . .").

### I. Stipulations

Petitioner alleges that his counsel was ineffective for stipulating to certain foundational matters.  (Mot. to Vac. p. 34-35).  More specifically, Petitioners asserts that his counsel entered into stipulations with the government regarding the chain of custody for certain exhibits without his knowledge or consent.  Petitioner argues that entering into these stipulations was contrary to his defense.

The Court notes that it is not unusual for counsel in a trial to stipulate to uncontested facts.  Petitioner does not provide any argument that the chain of custody for any of the evidence at issue was improper.  Consequently, at a minimum,[8] Petitioner cannot establish that he was prejudiced by his counsel's decision not to make the

---

[8]  The Court notes that in most instances defense counsel need not seek permission from a client for decisions such as stipulating to a chain of custody where prejudicial irregularity has not been perceived.

Government prove the chain of custody at trial.

### J. Failure to Subpoena August 2000 Wire Transfer

Petitioner alleges that his counsel was ineffective for failing to subpoena prior to trial the wire transfer of money sent by Oscar Taylor to Loren Paul in August 2000. (Mot. to Vac. pp. 35-36).

Petitioner admits that this wire transfer was subpoenaed and obtained during trial. (Pet. Mot. to Vac. p. 35). In addition, the money transfer was testified about at trial. (Tr. Trans. pp. 490-92). Indeed, his counsel extensively cross-examined Loren Paul regarding this transfer. (Tr. Trans. pp. 490-94). Petitioner asserts that had counsel subpoenaed the August 2000 wire transfer prior to trial he would have questioned Oscar Taylor[9] about the transfer and Taylor, contrary to Paul, would have testified that the August 2000, transfer was for the drug transaction that took place on August 17, 2000. Petitioner provides no support for his assertion that Taylor would have so testified.

Petitioner also asserts that this wire transfer would establish that he was not involved in the drug deal because the money was not sent to him. The jury was well aware who sent and who received the August 2000, wire transfer. Moreover, the fact that the money transfer was not sent to Petitioner does not conclusively establish that he was not involved.

Finally, given the overwhelming evidence, including Petitioner's admission that

---

[9] Petitioner's counsel requested the opportunity to cross-examine Oscar Taylor on the subject of the August wire transfer but, for strategic reasons, opted not to do so. (Tr. Trans. pp. 346-48).

he had sold cocaine to a number of individuals, (Jan. 14, 2002, Tr. Trans. pp. 17-22) and that he was guilty of the 1999 cocaine conspiracy conviction (Id. at 26-27), Petitioner suffered no prejudice.

### K.  Failure to Provide Alternative Translations

Petitioner alleges that his counsel was ineffective for failing to provide alternative translations for the taped recordings.  (Mot. to Vac. pp. 36-37).  Petitioner asserts that this failure denied him a fair trial.

Petitioner fails to articulate what the content of an alternative transcript would have been.  In his affidavit, Petitioner's counsel asserts that no transcript of the tapes would have omitted the discussion of cocaine and Petitioner and the conspiracy for which he was charged.  (Bell Aff. ¶ K).  In addition, the Court notes that the jury was instructed that the transcript provided was not evidence – that the jury must assess the tapes themselves.  (Tr. Trans. pp. 128-31).   As previously highlighted in this Order, the evidence against Petitioner was substantial.  Consequently, at a minimum, Petitioner cannot establish that he was prejudiced.

### L.  Failure to Play Entire Tapes

Petitioner alleges that his counsel was ineffective for failing to play some tapes in their entirety[10] and for failing to play some tapes at all.  (Mot. to Vac. pp. 37-38). Petitioner asserts that as a result, his counsel denied him a fair trial.  Again, Petitioner does not provide any specifics to support his allegation that playing the tapes in their entirety would have changed the outcome of his trial.  As previously highlighted in this

---

[10] Petitioner's counsel reviewed all the tapes and made strategic decisions as to what should be played.  (Tr. Trans. pp. 341, 350-51).

Order, the evidence against Petitioner was substantial.  Consequently, at a minimum, Petitioner cannot establish that he was prejudiced.

## M.  Failure to Object to Opening Statement

Petitioner alleges that his counsel was ineffective for failing to object to three statements made during the prosecution's opening statement.  (Mot. to Vac. p. 38).  More specifically, Petitioner asserts that his counsel should have objected when the prosecutor referred to the starting date of the conspiracy and stated "I'm sure it happened earlier."  In addition, Petitioner asserts that his counsel should have objected when the prosecutor vouched for witness Loren Paul by stating "He's told the truth, we believe, about that matter."  Thirdly, Petitioner asserts that his counsel should have objected when the prosecutor stated that if the trial lasted longer than a week it was the defense attorney's fault.[11]

It is impermissible for a prosecutor to vouch for or bolster the testimony of a government witness during arguments to the jury.  See United States v. Sanchez, 118 F.3d 192, 198 (4th Cir. 1997).  Vouching occurs when the prosecutor's remarks are such that a jury could reasonably believe that the prosecutor was indicating a personal belief in the credibility of the witness.  See United States v. Lewis, 10 F.3d 1086, 1089 (4th Cir. 1993).  To determine if such a remark is reversible error, a reviewing court must determine whether the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Id. (quoting Donnelly v. DeChristoforo,

---

[11] The Court finds Petitioner's attempt to portray this comment as objectionable to be overreaching.  As recalled by the undersigned it was merely a moment of levity and it came across as such.

416 U.S. 637, 643, (1974)).  This determination requires the reviewing court to look at "the nature of the comments, the nature and quantum of the evidence before the jury, the arguments of opposing counsel, the judge's charge, and whether the errors were isolated or repeated." Boyd v. French, 147 F.3d 319, 329 (4th Cir.1998) (internal quotation marks omitted).

At a minimum, this Court holds that Petitioner suffered no prejudice as a result of his attorney's decision not to object to the prosecutor's statements.  With regard to the prosecutor's statement during opening argument that he believed that the conspiracy may have started earlier than the alleged year 1995, such statement was in no way critical to determining Petitioner's guilt or innocence.  With regard to both statements, the undersigned gave a limiting instruction immediately following the prosecutor's opening statement.  At that time the jury was reminded that what the attorneys said was not evidence and should not be considered in reaching a verdict.  Specifically, the undersigned informed the jurors that statements by the prosecutor as to his beliefs should not be considered in reaching a verdict.  (Tr. Trans. p. 89).  Consequently, the comments should not have had a misleading affect.  Moreover, the evidence at trial of guilt was strong.  Because the prosecutor's statements did not so infect the trial with unfairness as to make the resulting conviction a denial of due process, Petitioner's counsel was not ineffective for failing to object.

### N.  Failure to Investigate the Facts

Petitioner alleges that his counsel was ineffective for failing to understand and apply the law of conspiracy because Oscar Taylor became a Government informant in 1999 and a conspiracy cannot exist between a defendant and a Government informant.

(Mot. to Vac. pp. 38-39).

Petitioner's argument fails because evidence established that Petitioner entered into a conspiracy with Oscar Taylor prior to the time he became an informant. (Tr. Trans. pp. 100-105). In addition, there were other individuals, such as Everette and Scott, who were not informants who were involved in the conspiracy. Consequently, Petitioner has not established that his counsel was ineffective or that he was prejudiced.

### O.  Failure to Recall Taylor to Witness Stand

Petitioner alleges his counsel was ineffective for failing to recall Oscar Taylor to the witness stand to ask him about the August 2000 wire transfer. (Mot. to Vac. pp. 39-40). Petitioner asserts that if his counsel recalled Taylor he could have been impeached with the wire transfer. It appears in his response that Petitioner is asserting that Taylor should have been recalled so that he could be asked about the wire transfer. Petitioner fails to present any evidence to support a conclusion that Taylor's testimony on recall would have been favorable. As such he has failed to establish that he was prejudiced by his counsel's decision not to recall Taylor.

### P.  Apology

Petitioner alleges that his counsel was ineffective when he apologized for making a mistake when he cross-examined Oscar Taylor. (Mot. to Vac. p. 40-41). More specifically, Petitioner argues that his counsel was ineffective when he apologized for not understanding that Oscar Taylor was telling the truth regarding Taylor's testimony about directions to Hickory and Petitioner's role therein. Petitioner asserts

that his counsel's apology was unnecessary and prejudiced him because it bolstered Taylor's credibility.

Petitioner appears to be referring to the following statement made by his counsel during his cross-examination of Oscar Taylor: "Before I was asking you about a conversation and I will correct myself. I was asking you about a conversation between Mr. Paul and Detective Richardson as to not knowing how to get to North Carolina. So I will correct myself on that." Petitioner asserts that the tape recording of August 17, 2000, established that his counsel's original line of questioning was correct – that Taylor had informed Loren Paul that he should ask Petitioner for directions. The Court does not have the tapes or the transcripts before it. Nevertheless, even if Petitioner's allegations were correct, his claim still fails.[12] In reviewing the trial transcript, the Court finds that even if counsel's concession was unwarranted, it did not prejudice the Petitioner. That is, the evidence against Petitioner in this case even aside from the August 17, 2000, arrest, was overwhelming: Petitioner's admission on the stand that he sold cocaine to numerous individuals (Tr. Trans. pp. 17-22); Petitioner's admission that he was guilty of the 1999 cocaine conviction involving a large amount of cocaine (Tr. Trans. pp. 26-27 ); the phone record; the wire transfers; and the taped conversations involving drug deals. Consequently, at a minimum, Petitioner's does not establish that he was prejudiced.

---

[12] The Court notes that later in the trial Petitioner's counsel cross-examines Loren Paul and repeatedly asks him about Oscar Taylor requesting that he contact Petitioner for directions. (Tr. Trans. pp. 494). It is also undisputed that Agent Richardson spoke to Loren Paul several times on August 17, 2000.

### Q. **Failure to Counsel Defendant re: Testifying**

Petitioner alleges that his counsel was ineffective for failing to prepare Petitioner for his testimony and for soliciting incriminating testimony regarding prior drug activities from Petitioner. (Mot. to Vac. pp. 41-42).

Petitioner admits it was his decision to testify.[13] Petitioner, a college graduate, does not specify how precisely his counsel should have prepared him. While Petitioner admitted on direct examination that he had received drugs from Oscar Taylor (Jan. 14, 2000, Tr. Trans. pp. 10-11), it was during cross-examination that his incredibly damaging testimony – that he sold cocaine to numerous individuals and that he was in fact guilty of his 1999 drug conviction involving half a kilo of cocaine – was elicited. Assuming, as he was under oath, that he was telling the truth, it is unclear to the Court how Petitioner's counsel could have prevented those answers. Petitioner was well aware of the risks he took in testifying. Before he took the stand, the Court explicitly informed him that the prosecution would cross-examine him and also that the prosecution would raise the fact of his prior conviction. (Tr. Trans. p. 722). Petitioner has failed to establish that his counsel was ineffective.

### R. **Failure to Object to Court's Answer to Jury Question**

Petitioner alleges that his counsel was ineffective for failing to object to the Court's allegedly erroneous instruction to the jury to rely on their own recollection

---

[13] Petitioner alleges in his response to the Government's Motion for Summary Judgment that counsel failed to fully advise him regarding his right to testify and therefore his waiver of his Fifth Amendment rights was not knowing and voluntary. (Pet. Resp. Mot. Summ. J. p. 27). The trial transcript completely contradicts Petitioner's present self-serving assertion. That is, the Court specifically informed Petitioner of his rights with regard to testifying and not testifying. (Tr. Trans. pp. 721-23).

regarding a factual question posed by the jury.  (Mot. to Vac. pp. .42-43).

The jury instruction given by the Court was well within its discretion and therefore Petitioner's counsel had no basis for objecting to the instruction.  <u>See</u> <u>e.g.</u> <u>United States v. Martinez</u>, 136 F.3d 972, 977-78 (4th Cir.), <u>cert. denied</u>, 524 U.S. 960 (1998)(supplemental jury instructions are entitled to a high degree of deference and will be disturbed only for abuse of discretion).   As such his counsel was not ineffective for failing to object.  Moreover, Petitioner's counsel offered the course now advocated by Petitioner but this Court, as stated in the record, did not agree that such was the correct course of action given the circumstances.  (Tr. Trans. pp. 837-39).  Petitioner has failed to establish that his counsel was ineffective or that he was prejudiced by his failure to object.

### S.  Failure to Object to § 851 Notice

Petitioner alleges that his counsel was ineffective for failing to object to the § 851 Notice of Enhancement that was filed in his criminal case.   (Mot. to Vac. pp. 43-45). More specifically, Petitioner argues that his counsel should have argued that his prior conviction was unconstitutional.  Petitioner contends that he was not represented by counsel with regard to the March 20, 1996, Georgia conviction that was used to enhance his sentence.

At sentencing, the issue of whether Petitioner was represented by counsel in connection with his 1996 Georgia conviction was raised and evidence was submitted showing that he was represented.   (Sent Hearing Trans. pp. 416-18).  Furthermore, Petitioner's counsel states in his affidavit that he did investigate the underlying conviction and found no basis for filing an objection.  (Bell Aff. ¶ S).  Petitioner offers no

23

evidence to establish that he was not represented.  As such, Petitioner has failed to establish that his counsel's performance was deficient or that he was prejudiced.

### T.  Appellate Attorney

Petitioner alleges that his appellate attorney was ineffective for failing to raise the issue of the invalidity of his underlying 1996 Georgia conviction.  (Mot. to Vac. p. 45). For the reasons stated previously, Petitioner has failed to establish that his claim has any validity and as such he fails to establish that his appellate counsel was deficient or that he was prejudiced.

### U. Cumulative Errors

Petitioner alleges that the cumulative errors of his counsel resulted in the denial of Petitioner's right to due process under the law.  (Mot. to Vac. pp. 45-46).  A thorough review of the record of this case, reveals that Petitioner's counsel vigorously defended Petitioner.  Petitioner's counsel cannot be held responsible for the overwhelming evidence against Petitioner.

## IV.  MOTION TO AMEND

On March 3, 2005, Petitioner filed a Motion to Amend seeking to add a claim to his Motion to Vacate based upon the Supreme Court's ruling in Booker v. Washington, 125 U.S. 738 (2005).

The Fourth Circuit has held that the rule announced in Booker was not a watershed rule warranting retroactive application.  United States v. Morris, 429 F.3d 65 (4th Cir.2005)(criminal defendant unable to raise Blakely or Booker claim for the first time in § 2255 petition when judgment of conviction became final before the Supreme

Court decided <u>Booker</u>).  Consequently, Petitioner's Motion to Amend is futile and is denied on that basis.

## CONCLUSION

On this record, Petitioner has failed to establish a fair cross-section claim, prosecutorial misconduct, or ineffective assistance of counsel.   Consequently, the Court concludes that all of Petitioner's claims must be denied and dismissed.

**THEREFORE, IT IS HEREBY ORDERED that:**

1. Petitioner's Motion to Amend is **DENIED**;

2. Respondent's Motion for Summary Judgment is **GRANTED**;

3.  Petitioner's Motion for Summary Judgment is **DENIED**; and

4. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence is **DISMISSED**.


Signed: June 11, 2007


Richard L. Voorhees
United States District Judge